UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **WALTER L. McCOY,** | * | |
| **Petitioner** | * | |
| **v** | * | **Civil Action No. GJH-19-233** |
| **CHRISTOPHER S. SMITH, Warden,** *et al.* | * | |
| **Respondents** | * | |
| | *** | |

## <u>MEMORANDUM OPINION</u>

Pending is Walter L. McCoy's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in the Circuit Court for Baltimore City, Maryland for attempted murder and related offenses.  Respondents argue McCoy's claims are not cognizable on federal habeas review, are procedurally defaulted, are without merit, and do not warrant relief. McCoy filed a Reply.  After reviewing the filings, the Court finds no need for an evidentiary hearing.  *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6; *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons to follow, the Petition will be denied and dismissed, and no certificate of appealability shall issue.

### I.   BACKGROUND

**A. Trial**

McCoy was charged with attempted first-degree murder, attempted second-degree murder, use of a firearm during a crime of violence, possession of a firearm by a disqualified person, and violation of a protective order in connection with the shooting of Monique Smith, his former girlfriend, and the mother of his child.  McCoy was tried before a jury in the Circuit

Court for Baltimore City. On June 24, 2014, the jury found McCoy guilty of attempted second-degree murder, use of a handgun in the commission of a crime of violence, wearing, carrying and transporting a handgun, possession of a firearm as a disqualified person, and violating a protective order. *Id*. at 8-10.

On August 22, 2014, the court sentenced McCoy to eighteen years of incarceration for the attempted second degree murder conviction and two concurrent eighteen-year terms for use of a handgun and possession of a firearm. The court imposed a concurrent three-year term for the wearing, carrying and transporting conviction and a concurrent ninety-day sentence for violating the protective order. *State of Maryland v. Walter L. McCoy*, No. 113175005.

On direct appeal, the Court of Special Appeals of Maryland, summarized the facts at trial.

> On May 26, 2013, Monique Smith was shot twice in the leg; one bullet hit her in the back of her leg and went through her leg with an exit wound on the inner thigh, and the second bullet grazed her right thigh. Smith identified McCoy as the man who shot her. Smith and McCoy had been in a volatile relationship that began in 2005.
>
> At 12:00 a.m. on May 26, 2013, Smith started her shift as a concierge at the Lakewood Apartments located at 1401 North Lakewood Street in Baltimore City, Maryland. The front and back doors were locked. Shortly after 12:00 a.m., Smith heard a noise at the front door. She saw a man, clad in black clothing, pulling on the door handle before he turned and walked away. Smith called the police and was placed on hold when she heard someone pulling on the back door. Smith turned to see a man whom she later identified as McCoy. At that time, the man was wearing a facemask that covered his nose and mouth, leaving his eyes and eyebrows visible. Smith testified that this man told her, "you think it's a game?" and went to reach for something in his waistband. Smith ran around the wall and shut a door behind her and, when she heard the man following her, she continued to run. As she ran, Smith heard two shots. She fell against the wall and felt something hot on her leg. Smith ran up the stairs and knocked on a couple of apartment doors looking for help. The resident of Apartment 205 let Smith in, and he called 911 at Smith's request. Once on the phone, Smith told the emergency operator that she had been shot twice. Smith identified McCoy as her assailant and related that he drove a 2006 Nissan. After the police arrived, Smith was taken to Johns Hopkins Hospital whereupon she was discharged some six hours later.

Officer Darcy Debrosse, the first officer to respond to the Lakewood Apartments, found blood and shell casings on the first floor hallway and bullet holes in a nearby door, but no weapon. Off. Debrosse followed the blood trail to a second-floor apartment where he spoke to Smith, who told him that her boyfriend, McCoy, had shot her. Responding to the scene, Detective Scott Henry determined that the point of entry was the building's rear door which was broken and "hanging off" the door frame. In the first floor hallway, Det. Henry observed two 10-millimeter shell casings, which indicated to him the use of a semi-automatic handgun, two bullet fragments, and two strike marks, which Det. Henry described as the impression left on a wall from the bullet actually hitting the wall. No weapon was recovered from the scene and no suspect was arrested on the scene in relation to this shooting.

On the morning of May 26, 2013, the police tracked McCoy, through his cell phone, to the 5126 Darien Avenue residence of Tanielle Allen and learned that McCoy owned a 2006 Nissan registered to him at that address. By 8:00 a.m. on May 26, 2013, police arrested McCoy when he came out of the back door. The search of this home revealed no handgun or black clothing. Some two hours later, McCoy's car, a 2006 Nissan Maxima, was located several blocks away in front of 5112 Groton Road and towed to the Baltimore City Police Department's Eastern District garage. When Det. Henry later interrogated McCoy and asked him where his car was, McCoy responded that it was with his aunt, but when Det. Henry asked him where that was, McCoy paused for about five minutes. When Det. Henry told McCoy that the police had his car and asked him more about the car, McCoy responded, "I'm not at liberty to discuss that."

A search warrant was obtained on May 29, 2013, and a search and seizure warrant was executed on McCoy's automobile on May 30, 2013. During the search of the vehicle, Det. Henry recovered one fired 10-millimeter cartridge casing in or underneath the rear seat. A search warrant was also obtained for McCoy's residence and no evidence of value was recovered from that home or from Tanielle's home.

Firearms examiner Daniel Lamont performed microscopic shell casing comparison of the two cartridge cases found on the scene and the one recovered from McCoy's vehicle. As a result of Lamont's examination of the three casings, he concluded that all were fired from the same firearm. Christopher Favor, a second firearms examiner, conducted an independent comparison of the three cartridge casings and came to the same conclusion that the casings were fired from the same firearm.

*McCoy v. Maryland,* No. 1704 (Ct. Sp. App. September 14, 2015); ECF 16-3 at 123-125.

### B. Direct Appeal

McCoy raised six claims of error on direct appeal: (1) the circuit court erred in denying his pretrial motion to suppress evidence recovered from his car, due to lack of probable cause supporting the search warrant for the car;  (2) the circuit court erred in admitting the expert testimony of ballistics examiner Daniel Lamont; (3) the circuit court erred in allowing Monique Smith to testify to McCoy's past incarceration and bad acts; (4) the circuit court erred in sustaining the State's objection to defense questioning about Monique Smith's mental health; (5) the evidence was insufficient to sustain McCoy's convictions; and (6) the circuit court erred in the sentences it imposed for the three firearms counts. (ECF 16-3 at 51, 56-57).

The Court of Special Appeals remanded the case for resentencing on the firearm convictions, but otherwise affirmed the lower court's judgment.  *See Walter McCoy v. State*, No. 1704, Sept. Term 2014 (filed Sept. 14, 2015). The mandate issued October 16, 2015.

The Court of Appeals dismissed McCoy's petition for certiorari "on the grounds of lateness." *McCoy v. State*, 445 Md. 489 (2015) (table) (ECF 16-3 at 154).  McCoy's motion to reconsider the dismissal was denied on February 22, 2016. (ECF 16-3 at 167).

On remand from the Court of Special Appeals, the Circuit Court for Baltimore City on March 2, 2017, resentenced McCoy on the firearms convictions.  Resentencing did not reduce McCoy's total 18 year term of incarceration. (ECF 16-11 at 7-8).  McCoy appealed, and the Court of Special Appeals affirmed by unreported opinion.  *See Walter McCoy v. State*, No. 204, Sept. Term 2017 (filed Nov. 6, 2017), 2017 WL 5125888 (ECF 16-3 at 425–27).  The mandate issued December 7, 2017.  On February 16, 2018, McCoy's timely Petition for Certiorari was denied by the Court of Appeals.  *See McCoy v. State,* 457 Md. 409 (2018) (table).

### C.  Post-Conviction

On July 21, 2016, McCoy, proceeding pro se, filed a Petition for Post Conviction Relief, which was later supplemented by his counsel.  (ECF 16-3 at 23, 168-209, 256-58, 263-70).  On March 27, 2017, the Circuit Court for Baltimore City denied the Petition in a Statement of Reasons and Order.  (ECF 16-3 at 277-339).  The Court of Special Appeals denied McCoy's Application for Leave to Appeal the denial of his Post Conviction Petition. (ECF 16-3 at 27, 446-48).

## II.  LEGAL STANDARDS

### A.  Procedural Default

If a claim was not raised in post-conviction proceedings or on direct appeal, or a timely appeal was not noted, the claim is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

Procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone,* 166 F.3d 255, 260 (4th Cir. 1999).  The United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman*, 501 U.S. at 731–32). Under Maryland law, "an allegation of error is waived when a petitioner could have made, but

intelligently and knowingly failed to make the allegation . . . in a prior [post-conviction] petition." Md. Code Ann., Crim. Proc. § 7-106(b). A rebuttable presumption exists that this waiver was knowing and intelligent. *Id.* § 7-106(b)(2).

If there is procedural default, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting Murray, 477 U.S. at 488). "Prejudice" exists if a petitioner can show not merely that the alleged errors "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the] entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982)

Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995). "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Assertions of actual innocence used as a gateway to review an otherwise defaulted claim must be supported by new evidence that demonstrates no reasonable juror could have convicted the petitioner. *See Buckner v. Polk*, 453 F.3d 195, 199–200 (4th Cir. 2006).

**B**. **28 U.S.C. § 2254**

A petition writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(a). A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme] Court." *Williams v. Taylor,* 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting

7

*Yarborough. v Alvarado*, 541 U.S. 652, 664 (2004)).  In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts.  *Id*. This standard was "meant to be" one that is "difficult to meet. . . ."  *Harrington*, 562 U.S. at 102.

Further, the habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."  *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)."  *Id*.

### C. Ineffective Assistance of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI. The "right to counsel is the right to the effective assistance of counsel."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In *Strickland*, the Supreme Court explained that to show

constitutionally ineffective assistance of counsel, a petitioner must show both deficient

performance and prejudice - that "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id*. at 687, and

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Id*. at 694.

  To satisfy the performance part of the Strickland standard, a petitioner must demonstrate

that counsel's performance was not "within the range of competence normally demanded of

attorneys in criminal cases." *Id*. at 687.   A petitioner must show that the attorney's performance

fell "below an objective standard of reasonableness," as measured by "prevailing professional

norms." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *United States v. Powell,*

850 F.3d 145, 149 (4th Cir. 2017). "Judicial scrutiny of counsel's performance must be highly

deferential" and not based on hindsight.  *Stokes v. Stirling*, _ F.4th _, 2021 WL 3669570 at * 6

(4th Cir. August 19, 2021) (citing *Strickland*, 466 U.S. at 689).  The central question is whether

"an attorney's representation amounted to incompetence under 'prevailing professional norms,'

not whether it deviated from best practices or most common custom."  *Harrington,* 562 U.S. at

88 (quoting *Strickland*, 466 U.S. at 690).

  A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics

fall 'within the wide range of reasonable professional assistance.'"  *Burch v. Corcoran*, 273 F.3d

577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689), *see also Harrington,* 562 U.S. at

109 (2011) ("There is a strong presumption that counsel's attention to certain issues to the

exclusion of others reflects trial tactics rather than sheer neglect.") (citations and internal

quotation marks omitted).  A defendant "has a right to effective representation, not a right to an

attorney who performs his duties 'mistake-free.'"  *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)).

The second or prejudice part of the *Strickland* standard considers whether counsel's errors were so serious that they deprived the defendant of a fair trial whose result is reliable and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 690-94.  "The likelihood of a different result must be substantial, not just conceivable," *Harrington,* 562 U.S. at 112 (citation omitted), so as to "undermine confidence in the outcome" of the trial, *Strickland*, 466 U.S. at 694.  "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Id*. at 686.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id*. at 693.  Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  A determination need not be made concerning the attorney's performance if no prejudice would have resulted had the attorney been deficient.  *See id*. at 697.

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  *Harrington,* 562 U.S. at 788 (internal citations omitted).  "When §2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  *Id.*

## III.  DISCUSSION

In this petition, McCoy alleges that his constitutional rights under the Fourth, Sixth and Fourteenth Amendments were violated, and raises thirteen claims for federal habeas relief.

**A. Claims Presented**

1. Trial counsel provided ineffective assistance by failing to question further or move to strike a juror who answered a voir dire question about bias in the affirmative. (ECF 1 at 12; ECF 1-8 at 3–6);

2. Trial counsel provided ineffective assistance by eliciting testimony about McCoy's prior bad acts and incarceration during cross-examination of the victim. (ECF 1 at 12; ECF 1-8 at 6–10);

3. Trial counsel provided ineffective assistance by failing to cross-examine the State's firearms expert, Daniel Lamont, effectively and by failing to present a defense expert witness on ballistics. (ECF 1 at 12; ECF 1-8 at 11–12);

4. Trial counsel provided ineffective assistance by failing to move to exclude a cartridge casing recovered from McCoy's car. (ECF 1 at 13; ECF 1-8 at 12–13);

5. Trial counsel provided ineffective assistance by failing to call Officer Steven Fraser as a defense witness about the condition of the back door of the apartment building where the crime occurred. (ECF 1 at 13; ECF 1-8 at 14–16);

6. Trial counsel provided ineffective assistance by failing to "remind the jury" during closing argument about Officer Debrosse's testimony that there was an unidentified person at the crime scene. (ECF 1 at 13; ECF 1-8 at 16–17);

7. Appellate counsel rendered ineffective assistance by failing to argue that the trial court abused its discretion by denying McCoy's motion for judgment of acquittal. (ECF 1 at 13; ECF 1-8 at 17–23);

8. The trial prosecutor committed misconduct by making "misleading statements" to the jury in closing argument. (ECF 1 at 13; ECF 1-8 at 23–25);

9. The trial court violated the Confrontation Clause of the Sixth Amendment by admitting statements of another firearms examiner through the testimony of the State's firearms expert witness, Lamont, and appellate counsel provided ineffective assistance by failing to raise the issue on appeal. (ECF 1 at 14; ECF 1-8 at 25–30);

10. Trial counsel provided ineffective assistance in litigating McCoy's motion to suppress evidence by failing to present evidence to contradict the State's witness, Detective Scott Henry. (ECF 1 at 14; ECF 1- 8 at 31–37);

11. Trial counsel provided ineffective assistance by failing to file a motion to dismiss for violation of Maryland's "*Hicks* rule," Maryland Rule 4-271. (ECF 1 at 14; ECF 1-8 at 37– 38);

12. The trial court erred in accepting the State's firearms expert, Lamont, as an expert witness. (ECF 1 at 15; ECF 1-8 at 38–40); and

13. The trial court erred in denying McCoy's motion to suppress evidence recovered from the search of his vehicle. (ECF 1 at 15; ECF 1-8 at 40–44).

**B. Analysis**

1. <u>Trial Counsel was Ineffective for Failing to Strike Juror 228</u>

McCoy asserts that during voir dire Juror 228, affirmatively answered a question about bias ("bias question")[1] but was not called to the bench for follow-up questioning.  McCoy contends that trial counsel rendered ineffective assistance by not moving to strike Juror 228 from the jury, and as a result he was denied a fair and impartial jury trial (ECF 1 at 12; ECF 1-8 at 3–6).

The record evidence shows that Juror 228 did not answer the bias question in the affirmative.  Rather, *Juror 288,* answered the question in the affirmative, and mistakenly identified himself to the court as Juror 228.

Members of the venire were questioned during jury selection whether they or their immediate family had been a victim of a crime or incarcerated over the past five years and those whose "answer is yes to any part of this question" were instructed to "please rise."  Trial Trans. June 16, 2014, ECF 16-4 at 157.  Potential jurors stood to indicate an affirmative response to the question as their numbers were called.

---

[1] Potential jurors were queried:

> Has any member of the jury panel or any member of your immediate family ever been the victim of a crime? Has any member of the jury panel or any member of your immediate family ever been convicted of a crime other than a non-incarcerable traffic offense? Has any member of the jury panel or any member of your immediate family ever been incarcerated in a jail or penal institution within the last five years? If your answer is yes to any part of this question, please rise.

Trial Trans. June 16, 2014, ECF 16-4 at 157.

A JUROR: 228.

THE COURT: 228.

THE CLERK: 228.

A JUROR: 288.

THE COURT: 288.

THE CLERK: Two—check your number.

A JUROR: Yea, 288.

THE CLERK: 288?

A JUROR: Yeah.

THE CLERK: All right. Thank you, sir.

*Id*. at 160-61.

Respondents have filed a certified video and audio recording of the voir dire,[2] photographs, the post conviction hearing transcript, and voir dire transcriptionist Michael O'Neil's declaration to clarify any ambiguity in the transcript.  ECF 16-2 (photos identifying jurors 288 and 228, photo showing Juror 288 standing in response to bias question; ECF 26 (audio/video recording of June 16, 2014, voir dire proceedings reflecting that Juror 228 did not answer the bias question affirmatively); Decl. of Michael O'Neil, ECF 16-1 at 3-6 (describing events on the audio/video); Trial Trans. June 16, 2014, ECF 16-4 at 219-21 (reflecting questioning of Juror 288 at the bench), 315–16 (excusing Juror 288); Post Conv. Trans. January 26, 2017, ECF 16-10 at 161-62 (trial counsel's testimony that Juror 228 did not responded affirmatively to the bias question or any other questions posed during voir dire).

---

[2] McCoy viewed the recording on November 23, 2021.  Decl. of Captain Cynthia Moore, ECF 26-2.

The record evidence clearly shows that when *Juror 288 rose in response to the bias question, he provided the court with his jury number, initially misidentifying himself as "228" before correcting the error and identifying himself as [Juror] "288."* (emphasis added). O'Neil Decl. ECF 16-1 ¶ 5.f; ECF 16-4 at 160–61. Juror 288 was later questioned at the bench and stricken for cause. O'Neill Decl. ECF 16-1 ¶¶ 5.g–h; Trial Trans. June 16, 2014, ECF 16-4 at 219-21, 315–16).

The record also shows clearly that Juror 228 did not answer the bias question in the affirmative and stayed seated. (ECF 16-2 at 4). She was later impaneled on the jury as Juror #4. Trial Trans. June 17, 2014, ECF 16-5 at 104, 109–12.[3]

This Court has reviewed the transcript, audio/video recording, photographs, and O'Neill declaration, none of which McCoy disputes in his Reply. Although the trial transcript could be read to suggest that Juror 228 and Juror 288 both responded affirmatively in quick succession to the bias question, any ambiguity is clarified by the photographs and video footage.

The record evidence is clear and convincing that Juror 228 did not answer the bias question in the affirmative. Trial counsel was not ineffective for failing to object to potential Juror 228. This claim has no merit and will be denied.

2. <u>Trial Counsel was Ineffective by Eliciting Testimony about Bad Acts and Incarceration.</u>

McCoy next asserts that trial counsel was deficient for eliciting testimony from the victim, Monique Smith, about McCoy's past bad acts and incarceration. During cross-examination, trial counsel asked:

---

[3] The post-conviction court rejected this claim as waived, finding that trial counsel did not object to the seating of Juror 228 and did not raise the issue on appeal. ECF 16-3 at 292. The post conviction court also concluded that based on the trial transcript, "Juror 228 answered affirmatively to the [crime] question, but subsequently was not called to the bench . . . . [and] ultimately sat on the jury in [McCoy's] trial," although issue was waived. ECF 16-3 at 292. The record before this Court clearly and convincingly rebuts this finding.

Q.  Ms. Smith, I want to take you back to a period in your relationship with Mr. McCoy in 2009. Did you in fact make a criminal complaint against Mr. McCoy in 2009 that resulted in his arrest?

A.  Would you be more detailed, you know, what kind—

Q.  Did you accuse Mr. McCoy of assaulting you back in 2009 which resulted in his arrest and incarceration?

A.  Yes.

                    *************************

Q.  Now, Mr. McCoy was released from his incarceration eventually in 2009; correct?

A.  Yes, sir.

                    *************************

Q.  He was released without any conviction; correct?

A.  Okay.

Q.  Now, in 2011, did you have occasion in 2011 to allege that Mr. McCoy had assaulted you?

A.  Mr. Cole, when you say assault, can you be more specific? I mean, Mr. McCoy has had several incidents with the police being involved and him being arrested. So unfortunately due to the many times I've been assaulted, you have to be specific.

Q.  Okay. I will be specific. Specifically on December 29, 2011, did you tell the police that Mr. McCoy had assaulted you?

A.  December the 9th?

Q.  December 29, 2011.

A.  I am not sure.

Q.  Okay. Do you recall him being incarcerated around that time frame?

A.  I am not sure.

Q.  Do you recall specifically on August 16, 2012, saying that Mr. McCoy had shot at you?

A.   Yes, sir.

Q.  And that was the reason for the protective order that you sought that's been introduced in this case; correct?

A.   Yes, sir.

Q.  Now, in either of those cases, did either of those cases result in any conviction?

[THE PROSECUTOR]: Objection.

Trial Trans. June 17, 2014, ECF 16-5 at 195-96, 199, 200-01.

The prosecutor's objection was sustained.  The assault charges against McCoy had been dismissed *nolle prosequi*.  The prosecutor argued that state case law holds that a prosecutor's decision to nolle prosse a case "has no bearing on a complainant's credibility."  Trial Trans. June 17, 2014, ECF 16-5 at 202.   In his closing argument, defense counsel reminded the jury that McCoy was not convicted for the 2011 or 2012 incident.  The prosecutor did not object this time. Trial Trans. June 19, 2014, ECF 16-7 at 71.

At the post conviction hearing, trial counsel testified that he deliberately elicited this testimony as a matter of strategy, explaining that he wanted to establish Smith's "pattern of trying to make false accusations…."  Post Conv. Trans. ECF 16-10 at 176-77.  Trial counsel also acknowledged the risk in discussing prior allegations because "[o]f course, it'll come out that the person had been charged with a crime," but "thought it was more important for the jury to know that [the witness] had made these false accusations."  *Id*. at 176-77.   His explanation of his strategy was consistent with the suggestion he made during his opening statement that Monique Smith had used the police and State's Attorney's Office to bring criminal charges against McCoy

16

when she believed McCoy was dating someone else.  Trial Trans. June 17, 2014, ECF 16-7 at 146-48.

The post-conviction court determined that trial counsel's explanation showed reasonable strategy, and that McCoy failed to show deficient representation and that counsel's actions prejudiced the outcome of trial.  ECF 16-3 at 313.

Trial counsel's decisions about cross examination fall within the scope of trial strategy, and the post-conviction court's rejection of the ineffective assistance of counsel claim was not an unreasonable application of *Strickland*.  *See Burch*, 273 F.3d at 588 (4th Cir. 2001) (noting the "strong presumption" that "counsel's strategy and tactics fall within the wide range of reasonable professional assistance").  The post-conviction court's ruling is well supported by the record and was neither contrary to, nor an unreasonable application of, *Strickland*.  Accordingly, federal habeas relief is denied as to this claim.

3. <u>Trial Counsel was Ineffective for Failing to Cross-Examine Firearms Examiner Competently or Call an Expert Defense Witness</u>

Next, McCoy asserts that trial counsel was ineffective for failing to cross-examine the State's expert witness, firearms examiner Daniel Lamont, and by failing to call a defense expert witness in rebuttal.

Lamont testified that based on microscopic comparison, cartridge casings recovered at the scene of the shooting were fired by the same firearm.  McCoy faults his trial counsel for failing to question Lamont about the "error rate of examining tool marks on cartridge cases" or "class characteristics, subclass characteristics, and individual characteristics of the tool mark examination," or to call a defense expert.  ECF 1-8 at 11.  The post conviction court rejected this claim, ruling that McCoy failed to prove ineffective assistance of counsel, and "even if trial

counsel was deficient in presenting contrary evidence to that offered by Lamont, that this deficiency" prejudiced his defense.  ECF 16-3 at 309.

At the post conviction hearing, trial counsel testified his strategy was to show on cross-examination that Lamont based his conclusions on subjective standards.  Trial counsel wanted "to make sure the jury fully understood this wasn't a science," it was "subjective," and Lamont "could not say with 100 percent certainty that [his conclusions] were true." Post Conv. Trans. ECF 16-10 at 174.  McCoy posed no questions to trial counsel about this issue, nor did he ask why a defense expert witness was not called.

McCoy does not overcome the strong presumption that his trial counsel's strategy and tactics were "'within the wide range of reasonable professional assistance.'" *Burch*, 273 F.3d at 588 (quoting *Strickland*, 466 U.S. at 689). When § 2254(d) applies, the question for the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.  The state post-conviction court's findings withstand review pursuant to 28 U.S.C. § 2254(d) and (e) and federal habeas relief will be denied as to this claim.

4.  Trial Counsel was Ineffective for Failing to Move to Exclude Cartridge Casings

McCoy claims trial counsel was deficient because he failed to move to suppress the cartridge casing found in his car.  He argues that had trial counsel presented evidence to rebut Lamont's firearms testimony that the cartridge casing was fired from the same firearm, as the casings found at the scene of the crime, the outcome of trial would have been different.  ECF 1-8 at 13.

At the post conviction hearing, McCoy's trial counsel testified that he filed a motion *in limine* to exclude Lamont's expert testimony about the ballistics tests showing matching

18

cartridge casings.  Trial counsel explained to the post conviction court that he didn't believe the
state of the science was sufficient "even though there's case law out there.  I think it's an
evolving topic." ECF 16-10 at 172.[4]  Counsel added:

> So I felt that that shouldn't really be the basis for such an important
> conclusion in a case such as this.  I'm convinced that evidence had not come
> in to the trial, that that shell casing had not been part of the evidence in the
> case that there may have been a different result.
>
> So I tried to attack it on two grounds. One was to show that the science really
> shouldn't be trusted even though there was case law out there to the contrary.
> And secondly, that if the Court was going to allow the testimony that the
> Court bar the witness from rendering that scientific opinion.

*Id*. at 173.

In denying defense counsel's motion *in limine*, the trial court determined that Lamont
properly qualified as an expert witness, his expert testimony was necessary to the trier of fact in
understanding the evidence, and the "comparative microscopic matching technique is generally
accepted in the scientific community."  ECF 16-3 at 41.[5]  The Court of Special Appeals affirmed
this ruling on direct appeal.  *McCoy v. State*, No. 1704 (Sept Term 2014). 2015 WL 6087573
ECF 16-3 at 129-133.

In rejecting this claim, the post conviction court concluded:

> In the instant matter, trial counsel was not questioned as to why he did not
> file a motion to suppress.  However, at [the] post-conviction hearing, trial
> counsel did testify that he filed a motion *in limine* relating to the qualifications
> of the firearms examiners as experts on the basis that the state of science was
> insufficient to rely on the toolmark analysis. Therefore as trial counsel filed
> the motion *in limine* relating to the cartridge casings, not filing the motion to
> dismiss may be considered trial strategy on his part.

---

[4]  Trial counsel also moved to suppress the warrant to search the vehicle.  The trial court denied the request. ECF 16-
3 at 36, 38.  The Court of Special Appeals affirmed on direct appeal.  *Id*. at 126-29.

[5]  McCoy renewed his objection to Lamont's expert testimony at trial, and the trial court overruled the objection
based on its ruling on the motion *in limine*.  Trial Trans. June 18, 2014, ECF 16-6 at 177-80.

ECF 16-3 at 334.

By so concluding, the post conviction court inferred that the basis for McCoy's motion to suppress the cartridge casing evidence, as contemplated in his post conviction petition, would have been premised on the same basis as his denied motion *in limine*: that the science of toolmark analysis was insufficient to for the firearms examiner to conclude the cartridge casings from McCoy's car and the cartridge casing found at the scene of the shooting were fired from the same gun.  McCoy had failed to prove that he was denied effective assistance of counsel and that even if trial counsel was "deficient in presenting contrary evidence to that offered by Lamont," McCoy had failed to show it had an adverse effect on the defense.  ECF 16-3 at 309.

The state court decision was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law or an unreasonable determination of the facts.  The post-conviction court's determination that trial counsel followed reasonable trial strategy by filing a motion *in limine* rather than a motion to suppress based on the same grounds, was neither deficient representation nor prejudicial to the outcome of trial, and amounts to a reasonable application of *Strickland*.  Notably there was other material evidence of McCoy's guilt introduced at trial including his identification by the victim, the identification of his car, and the fact that a bullet casing found in that car was of the same caliber that had been used in the shooting.  This claim will be denied.

### 5.  Trial Counsel was Ineffective for Failing to Call Officer Fraser as a Witness

McCoy faults trial counsel for not calling Officer Steven Fraser to refute or impeach testimony provided by State's witnesses Monique Smith and Detective Scott Henry.  At trial, Smith testified that when McCoy entered the apartment building through the back door, he "pulled the door so hard, he ripped it off the hinges.  He broke the lock and all that."  Trial Trans.

June 17, 2014, ECF 16-5 at 164.  Henry testified that "based on [his] investigation," Smith's assailant entered through the "rear entrance of the building[.]"  Trial Trans. June 18, 2014, ECF 16-6 at 46-47.  Henry testified to observing the rear door of the building as "a secured entrance with one of the magnetic locks that can be remotely unlocked," and that "the door handle on that door was broken, it was hanging off," and the door "frame was slightly bent."  *Id*. at 47.  McCoy argues that had Officer Fraser had been called, he could have rebutted this testimony based on the "Supplemental Report" Fraser filed.  The Supplemental Report states:

> On 26, May 2013, at approx. 0100 hours I conducted an area canvas of the rear of 1401 Lakewood [the address where the shooting occurred] in reference to a shooting. The area canvas included the school yard behind the building.  *Investigation revealed negative results on the area canvas.*

ECF 16-3 at 259 (emphasis added).

In McCoy's view, Fraser could have testified that the back door of the apartment building was undamaged, based on the last sentence of the report, to refute Smith and Henry's testimony.

At the post conviction hearing, trial counsel testified that he did not recall Smith or Henry's testimony about damage to the back door, but assuming they had testified there had been a forcible entry through the rear door, then the testimony of a police officer who saw nothing amiss would be "valuable."  Post Conviction Trans. ECF 16-10 at 181-183.  Trial counsel was not questioned about Officer Fraser specifically and was not presented a copy of Fraser's report.

The post conviction court rejected this claim, stating:

> In order to show that certain evidence would have been helpful, it must be shown that the evidence, considering the circumstances of the case, was of such value that there was a substantial possibility that the verdict would have been different had the evidence been introduced. Likewise, showing only that the uncalled witness's evidence might have been helpful is not enough. Accordingly, [McCoy] has failed to show how Fraser's testimony would have created a substantial possibility that the verdict would be different had the evidence been introduced.

ECF 16-3 at 329.

Defense counsel has "wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions . . . is particularly important because of the broad range of legitimate defense strategy" available. *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003); *see also Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). Whether to call a witness is a decision within the tactical discretion of counsel. *Fuertes v. United States*, No. CR RDB-10-0770, 2017 WL 2461931, at *3 (D. Md. June 7, 2017). Fraser's report does not address the condition of the door, but rather the area canvas including a school yard behind the building, not the rear entrance itself, so that this information was not of substantial value to the defense. McCoy's assumption that Fraser would have contradicted and impeached Smith and Henry's testimony about damage to the rear door is speculative, and insufficient to satisfy Strickland's prejudice prong, which requires "the likelihood of a different result must be substantial not just conceivable." *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012) (citations omitted). Under these circumstances, this Court finds no basis to disturb the ruling of the post conviction court. This claim provides no grounds to award federal habeas relief.

6. <u>Trial Counsel was Ineffective for Failing to Highlight Officer Debrosse's Testimony</u>

The next claim is that trial counsel provided ineffective assistance by failing to remind the jury during closing argument that Officer Darcy Debrosse, the first police officer to arrive at the scene of the shooting, testified that when he arrived at the apartment building, nobody was sitting at the front desk, but "somebody coming downstairs" let him into the building. Trial Trans. June 18, 2014, ECF 16-6 at 10. Debrosse testified that he thought the person who let him in was somebody who "'lives there' who was going outside." *Id*. at 27. Debrosse stated the person was not "involved in any way in this case." *Id.*

22

McCoy faults trial counsel for failing to remind the jury of this testimony during closing argument since it could have been "inferred that this person is the suspect that committed the crime[.]" ECF 1-8 at 16.  McCoy raised this claim in his post conviction proceedings, although trial counsel was not questioned about this issue at the post conviction hearing.  The post conviction court rejected the claim, concluding that McCoy had failed to overcome the presumption that trial counsel's closing argument was within the range of reasonable competent representation or had shown a "reasonable probability" that a better closing argument would have made a "significant difference" in the outcome of trial.  ECF 16-3 at 331-32, citing *Smith v Spisak*, 558 U.S. 139, 151 (2010).

Closing arguments must be considered in context, as a whole and against the context of a highly deferential standard of review.  *Yarborough*, 540 U.S. at 5 (2003) ("Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas.").  Even if some arguments would support the defense, it does not follow that counsel was ineffective for failing to include them.  *Id*. at 7.  When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.  *See id*. at 8.  The "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.  *Yarborough*, 540 U.S. at 8.

McCoy has not shown counsel's performance was objectively unreasonable or prejudicial to overcome the deference accorded to the state post conviction court decision.  This claim will be denied.

      7.  <u>Ineffective Assistance of Appellate Counsel</u>

McCoy next claims that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court's denial of his Motion for a Judgment of Acquittal was an abuse of discretion.

A written statement by McCoy's appellate counsel responding to his appellate ineffective assistance claims was jointly submitted by the parties to the post conviction court. (ECF 1-3).  In that statement, Appellate counsel responded that she had "challenge[ed] the trial court's failure to grant Mr. McCoy's motion for judgment of acquittal when [she] challenged the sufficiency of the evidence to support his conviction."  *Id*. at 10.[6]  On direct appeal, appellate counsel had argued *inter alia* that the only evidence connecting McCoy to the shooting was Smith's identification by "his eyes and eyebrows" because the assailant was otherwise completely covered in black clothing that was not found when McCoy's house was searched.  ECF 16-3 at 56, 81-85, 138.  The challenge to the sufficiency of the evidence on direct appeal was rejected by the Court of Special Appeals, which stated:

> Although Smith admitted to not being truthful in the past, a rational trier of fact is not precluded from believing that she told the truth on this occasion that McCoy was her assailant.  Smith identified McCoy as her assailant and described the car he drove immediately after the incident.  The level of familiarity that existed between McCoy and Smith during their seven year relationship could lead the jury to believe that observing the areas around his eyes while hearing what she perceived as his voice permits Smith to recognize McCoy.  Also admitted as corroborating evidence were bullet holes in the wall, the description of McCoy's vehicle, and a casing of the same caliber used in the crime was found in McCoy's car.  This was all consistent with Smith's testimony and made it reasonable for a jury to reject McCoy's

---

[6]  The Court of Appeals of Maryland has explained that:

> [A] motion for judgment of acquittal . . . , if granted, results in acquittal, and the proper test is sufficiency of the evidence to convict.  Weight and credibility are not at issue.  The evidence must be read from the viewpoint most favorable to the prosecution and if so read any rational fact-finder would find it sufficient, the motion must be denied.

*In re Petition for Writ of Prohibition*, 312 Md. 280, 325 (1988), disapproved in part on other grounds by *State v. Manck*, 385 Md. 581, 600 (2005).

allegation that Smith had framed him. Therefore, we conclude that the evidence was sufficient to support McCoy's convictions.

*Id.* at 140-41.

The post conviction court thus ruled "this allegation is without merit in light of [McCoy's] appeal to the Court of Special Appeals." ECF 16-3 at 324.[7] The state court ruling provides no grounds to award federal habeas relief and will be denied.

8. Prosecutorial Misconduct

Prosecutorial misconduct is actionable when it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010). A petitioner "must show (1) 'that the prosecutor's remarks or conduct were improper' and (2) 'that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.'" *United States v. Caro*, 597 F.3d 608, 624-25 (2010) (quoting *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002)).

McCoy asserts that the state prosecutor committed misconduct at trial by making misleading comments to the jury during closing argument. ECF 1 at 13. McCoy complains that during closing argument, the prosecutor sought to discredit the testimony of his fiancée Tanielle Allen, who testified at trial for the defense as an alibi witness. Trial Trans. June 18, 2014, ECF

---

[7] Respondents argue that were McCoy seeking to challenge the legal sufficiency of the evidence against him, such a claim is procedurally defaulted because he did not file a timely petition for certiorari on direct appeal. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (where habeas petitioner failed to seek discretionary review from state appellate court and "the time for filing such a petition ha[d] long passed," it "resulted in a procedural default"). In his Reply, McCoy blames the untimely filing of the petition for certiorari on his appellate counsel. ECF 21 at 20; ECF 16-3 at 159. McCoy seems to blame the instructions in his appellate counsel's letter of September 25, 2015, informing him that the Court of Special Appeals had affirmed the trial court, the Office of the Public Defender would not be pursuing further appeal, and that he had available avenues to pursue his claims. ECF 16-3 at 14, 159-60; 332-33. As discussed, appellate counsel challenged the trial court's denial of Mr. McCoy's Motion for Judgment of Acquittal in challenging the sufficiency of the evidence to support his conviction. Thus, even if this Court were to assume there was cause for the late filing of the Petition for Certiorari, McCoy does not demonstrate prejudice. McCoy has provided no new and credible evidence that he is actually innocent.

16-6 at 210-215.[8]  In McCoy's view, the prosecutor committed misconduct by arguing that Allen had motive to lie because "the only thing standing between [Allen] and her June wedding that she has planned with Mr. McCoy, is what Ms. Monique Smith told you… And [Allen] has every reason to tell you that Mr. McCoy was not there that not [sic, night?]" Trial Trans. June 19, 2014, ECF 16-7 at 85.  McCoy asserts there is no evidence to support these statements at closing argument, and these "inflammatory misleading statements" highly prejudiced him.  ECF 1-8 at 25.  Respondents argue this claim is procedurally defaulted and without merit.

McCoy raises this claim solely as one of trial error.  ECF 1-8 at 23–25.  Notably, no objection to these statements was made during closing argument. Trial Trans. June 19, 2014, ECF 16-7 at 82–85, and McCoy did not raise the issue on direct appeal.  ECF 16-3 at 56–57.  As a claim of trial court error, the claim is procedurally defaulted.

The post conviction court denied this claim due to McCoy's failure to allege with specificity, any facts surrounding the claim of error, and determined he had failed to meet his burden to show that even if trial counsel were deficient, this deficiency had an adverse effect on the defense. *Id*. at 302-03.

McCoy's generally stated assertion that the post conviction court's ruling was incorrect, Reply, ECF 21 at 25, is insufficient to show cause and prejudice to excuse procedural default. McCoy does not allege a miscarriage of justice or argue actual innocence. *Id.* at 24-25. Moreover, McCoy provides no evidence that the prosecutor's remarks deprived him of a fair trial. This claim is procedurally defaulted and will dismissed.

---

[8] Although McCoy states in his Reply, ECF 21 at 24, that Allen was not his fiancée, Allen testified at trial that they were planning to marry.  Trial Trans. June 18, 2014. ECF 16-6 at 226-27.

9. <u>Confrontation Clause Violation</u>

McCoy claims the trial court erred by admitting certain testimony by firearms examiner, Daniel Lamont in violation of the Confrontation Clause of the Sixth Amendment.[9]  Specifically, Lamont testified the two cartridge casings found at the scene of the shooting and a third cartridge case found in McCoy's car had been discharged from the same firearm, and that as part of the crime lab review process another examiner, Christopher Faber, had independently performed the same comparison as part of the review process.  Trial Trans. June 18, 2014, ECF 16-6 at 180-181.  Over the objection of McCoy's trial counsel, Lamont testified that Faber, who did not testify at trial, had also concluded all three cartridges were discharged from the same firearm.  *Id*. at 180-183.

As a claim of trial error, this claim is procedurally defaulted because McCoy did not raise it as an issue on direct appeal or argue it as a claim of trial error in the post-conviction proceeding.  ECF 16-3 at 56-57, 277-281.  McCoy provides no basis to excuse the procedural default.

McCoy also raises the related claim that appellate counsel provided ineffective assistance by failing to raise the Confrontation Clause issue on direct appeal.  ECF 1-8 at 30.  The record reflects that McCoy, argued on post conviction review and in his application for leave to appeal that appellate counsel was ineffective for failing to raise the Confrontation Clause issue on direct appeal. ECF 16-3 at 190, 375-76.  Appellate Counsel provided in her written statement to the post conviction court that she believed "in retrospect that [she] should have raised the issue,"

---

[9]  McCoy's claim that admission of this testimony violated his rights under Article 21 of the Maryland Declaration is not cognizable on federal habeas review.  *See Wilson v. Corcoran,* 562 U.S. 1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted).

although she had regarded Faber's conclusion "as a final confirmatory check and not another

expert's opinion."  ECF 1-3 at 3.  Appellate Counsel indicated that "[o]ther states have reached

the conclusions that experts can base their conclusions on an analysis done by another person or

expert without violating a defendant's right to confrontation even in a ballistics context." ECF 1-

3 at 3, (citing *State v. Walker*, 613 S.E.2d 330, 333 (N.C. App. 2005)).[10]  Appellate counsel

opined that had the appeals court found a Confrontation Clause violation, it was a "close

question" whether the error was harmless, "though that would be [her] leaning.  ECF 1-3 at 5.

Further, appellate counsel noted that trial counsel's cross-examination of Lamont focused on

probing the validity of the scientific methodology of ballistics comparison, rather than the

accuracy of Lamont's actual review of the ballistics evidence so that Faber's testimony would

have been duplicative of Lamont's.

        In rejecting McCoy ineffective assistance claim, the post conviction court noted that even

if Faber had been called as a witness it was unclear how McCoy's trial counsel could have

questioned him differently than he had questioned Lamont. The post conviction court noted

further that appellate counsel had recognized if there was error, it was probably harmless. ECF

16-3 at 322-23.

        An effective appellate counsel must "select the most promising issues for review," not

every possible claim. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (explaining that an

experienced advocate will emphasize "the importance of winnowing out weaker arguments on

appeal and "focusing on a few key issues.").  To overcome the presumption of effective

assistance of counsel, a petitioner must show that counsel "ignored issues are clearly stronger

_____

[10] At the post conviction hearing, McCoy's counsel, as an officer of the court, noted that in *Cooper v. State*, 434 Md.
209, 231-36 (2013), cert. denied, 573 U.S. 903 (2014), the Court of Appeals upheld the admission of a DNA report
through the testimony of a supervisor who had reviewed the examiner's analysis and report, ruling the report was
not testimonial and did not implicate the Confrontation Clause.  Post Conv. Trans. ECF 16-10 at 193-94.

than those presented." *Smith v. Robbins*, 528 U.S. 259, 765 (2000).  Appellate counsel raised six other claims on direct appeal, and in her view, the ineffective assistance claim based on the Confrontation Clause claim was not a strong claim.  The post conviction court reasonably concluded that McCoy had not shown appellate counsel's performance was objectively unreasonable or prejudicial.  This claim provides no grounds to warrant federal habeas relief and will be denied.

   10. <u>Ineffective Assistance of Trial Counsel in Litigating Motion to Suppress</u>

   McCoy asserts that trial counsel rendered ineffective assistance in litigating a motion to suppress the search warrant of his car.  More particularly, McCoy claims that trial counsel should have presented evidence to contradict Detective Scott Henry's testimony about how McCoy's vehicle was conducted.

   Henry testified that after McCoy's arrest on the day of the shooting, officers located McCoy's car and had it "towed back to Eastern District" where it was secured in a locked garage while a search and seizure warrant could be obtained.  Motions Hrg. June 16, 2014, ECF 16-4 at 27-29; Trial Trans. June 18, 2014, ECF 16-6 at 58.  Henry was not present when the car was towed, but testified that the officer who writes the tow report follows the vehicle until it is locked and secured inside the garage. ECF 16-4 at 28; ECF 16-6 at 92-93.  He testified standard procedure is that nobody is allowed into the vehicle unless there is a safety problem and then it is documented.  ECF 16-4 at 28.  Henry testified that there was no indication in the towed vehicle report "that anyone went in [McCoy's] vehicle."  *Id*. at 28.  After the warrant issued, the car was searched and a "shell casing" found in the car.  *Id*. at 68.

   In McCoy's view, a list of time his "Smart Start" car alarm was triggered should have been entered to show his car was entered and searched before the warrant was obtained.  ECF 8-

1 at 36, 26 ECF 1-5.  Respondents argue this claim is procedurally defaulted because McCoy did

not argue during post conviction proceedings that counsel rendered ineffective assistance by

failing to introduce car alarm evidence at the suppression hearing.  Rather, McCoy raised a claim

of ineffective assistance for failure to introduce the evidence *at trial* during his post conviction

proceedings and in his application for leave to appeal. Post Conv, Petition, ECF 16-3 at 184;

App. Brief ECF 16-3 at 65-67.  McCoy provides no grounds to excuse the procedural default.

Mindful that McCoy's drafting of his pro se federal habeas claim may be inartful,

consideration of this claim on the merits would prove unavailing.  At the post conviction hearing,

trial counsel testified that he received a list from McCoy's car alarm company with the time and

dates the car alarm was triggered.  Trial counsel told the post conviction court that he decided not

to introduce this information into evidence because the alarm could be triggered in a number of

situations in addition to opening the car door: any movement of the car could start the alarm,

including when the car was bumped, towed, or taken off the tow truck.  Trial counsel explained

for this reason, the "probative value of the evidence wasn't that great." ECF 16-10 at 168-69.

Moreover, even if a car door were opened, "it did not necessarily equate to a search."  *Id*.  The

post conviction court concluded that "trial counsel testified that he made a decision, as a matter

of strategy, not to pursue this specific piece of evidence." ECF 16-3 at 305.

McCoy fails to address or rebut the presumption that counsel's conduct was within the

wide range of reasonable professional assistance and consistent with sound trial strategy.

Accordingly, this Court will not disturb the state court's determination.  This claim will be

denied.

    11.  Ineffective Assistance of Trial Counsel to Move to Dismiss under *Hicks* Rule

McCoy contends that trial counsel provided ineffective assistance by failing to move to dismiss the charges based on the "*Hicks* Rule" which requires trial to be held within 180 days after the appearance of counsel or the defendant's initial appearance, absent postponement for good cause.  *See* Md. Code Crim. Proc. § 6-103; Md. Rule 4-271 ("*Hicks* rule"); *see also State v. Hicks*, 285 Md. 310 (Md. Ct. App. 1979) (holding that dismissal is ordinarily required for violation of the time requirement); *Tunnell v. State*, 223 A.3d 122 (2020) (noting a continuance beyond the *Hicks* date may be granted only for good cause).

This claim was raised by McCoy in his post conviction proceedings and in his application for leave to appeal.  ECF 16-3 at 189, 372-73.  Trial counsel acknowledged at the post conviction hearing that he did not file a motion to dismiss for violating the *Hicks* rule, but was unable to recall whether he had considered filing such a motion.  Post Conv. Trans. January 26, 2017, ECF 16-10 at 179-80.  Trial counsel testified that he had not "reviewed the actual time calculations" or determined "which postponement sent it beyond Hick's [sic]."  *Id*. at 180.

In its Response to the Post Conviction Petition, the State explained that there was good cause in this case to go beyond the 180 days.  The State had moved for a postponement for additional investigation when it became aware that McCoy may have sent a threatening letter.  ECF 16-10 at 154.  Additional time was requested to obtain a writing sample from McCoy, the postponement took the matter beyond the *Hicks* date, and a motion to dismiss for violating the *Hicks* rule would have been unsuccessful.  ECF 16-3 at 250.  McCoy confirmed that a postponement was granted in November 2013, to submit handwriting samples to compare to a threatening letter received by Monique Smith's child's father.  Post Conv. Trans. January 26, 2017, ECF 16-10 at 93-95, 157.  Another postponement was granted in January 2014, because the results of the handwriting analysis were still outstanding.  *Id*. at 95.

31

In denying this claim, the post conviction court ruled:

> The State indicated that the postponements were granted for good cause. [McCoy] does not offer any further evidence in support of this allegation. It is worth noting that at [McCoy's] post conviction hearing, testimony was presented which indicated that the first postponement was granted in order to complete a handwriting analysis on a letter allegedly sent by [McCoy] to a male friend of Smith, and the second postponement was granted to allow the State to complete analysis related to the recovered cartridge casings and bullet fragments.
>
> To this point, petitions for post conviction relief must set forth "the specific facts surrounding the claim of error." Courts are not to consider allegations with no supporting facts, or so called, "bald allegations." Accordingly, [McCoy] has failed to prove that he was deprived of effective assistance of counsel for trial counsel's failure to file a Motion to Dismiss [for] violation of the Hick's [sic] Rule.

ECF 16-3 at 317.

McCoy fails to establish that trial counsel's representation was objectively unreasonable or that this prejudiced the outcome of his proceedings. The post conviction court's rejection of this claim was reasonable and consistent with well-established federal law. This claim does not warrant federal habeas relief and will be denied. [11]

### 12.  Trial Court Error for Admitting Firearms Examiners as Expert Witnesses

McCoy's penultimate claim is the trial court erred by qualifying firearms examiners Daniel Lamont and Christopher Faber as expert witnesses in its pretrial ruling denying the defense's motion *in limine*. McCoy asserts these witnesses "did not meet the requirements as a witness governed by Md. R. 5-702, which resulted in [his] substantive rights being violated." ECF 1-8 at 38.

---

[11]  Insofar as McCoy may intend to invoke his right to a speedy trial under the Sixth Amendment, Maryland's statutory mandate to try the criminally accused within 180 days does not implicate the Sixth Amendment. *Vance v. Bishop*, Civil Action No. ELH-18-133, 2020 WL 2732075, at \*9 (D. Md. May 22, 2020), *appeal dismissed and remanded on other grounds*, 827 F. App'x 333 (4th Cir. 2020); *see also Hicks*, 403 A.2d at 361-62 (explaining that Maryland intended to provide additional statutory rights beyond the minimum threshold established by the Sixth Amendment).

In essence, this claim seeks review of the state courts' application of the Maryland Rules, which is inherently a state-law issue. The Constitution, however, "does not permit the federal courts to engage in finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983). Challenges to state court trial rulings about admission and exclusion of evidence are cognizable in federal habeas corpus only to the extent that they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair and thereby violate the due process clause of the Fourteenth Amendment. *Estelle,* 502 U.S. at 67-68; *Spencer*, 5 F.3d at 762-63. The Supreme Court has "defined the category of [such trial court] infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

McCoy's generally stated assertion that the trial court's determination violated his rights under the Fifth, Sixth and Fourteenth Amendment by admitting this evidence falls short of establishing a claim of constitutional dimension or suggesting a violation of fundamental fairness. ECF 21 at 35, 37. This claim is not cognizable on habeas review and will be dismissed.

### 13. Trial Court Error for Denying the Motion to Suppress Evidence from Car

Lastly, McCoy claims the trial court erred by denying his pretrial motion to suppress evidence obtained pursuant to the search warrant for his car in violation of his rights under the Fourth Amendment. Motions Hrg. June 16, 2014, ECF 4 at 21-61; ECF 16-3 at 37-38. McCoy raised this claim on direct appeal and the Court of Special Appeals affirmed the Circuit Court's ruling. ECF 16-3 at 123, 126-29.

Federal habeas corpus relief is not available for an alleged Fourth Amendment violation where the petitioner was afforded an opportunity for full and fair litigation of the issue in state court. *Stone v. Powell*, 428 U.S. 465, (1976); *Boggs v. Bair*, 892 F.2d 1193 (4th Cir. 1989), cert.

denied, 495 U.S. 940 (1990); *Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978).  The Supreme

Court has explained that the purpose of excluding evidence obtained in violation of the Fourth

Amendment is to deter misconduct of law enforcement officers conducting the searches.  *See*

*Stone*, 428 U.S. at 490-92.  Providing an additional avenue for exclusion of evidence through

federal habeas relief is unlikely to deter misconduct.  Accordingly, the proper focus is on

whether the Fourth Amendment claim was previously given full and fair consideration in the

state courts.  *Id.*

McCoy's Fourth Amendment claim was litigated at the pretrial suppression hearing and

on direct appeal to the Maryland Court of Special Appeals.  *See* Md. Rule 4-252(a) and (h)(2)

(motions to suppress evidence).  The trial court and appellate court both determined there was

probable cause to search McCoy's car.  The state courts have fully and fairly considered this

claim, and it will be dismissed here because it is not cognizable.

## IV.  CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137

S.Ct. 759, 773 (2017).  The petitioner "must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*,

542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues

presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  Because the Court finds that there has been no substantial showing of the

denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U.S.C.

§ 2253(c)(2). McCoy has not made the requisite showing.  Accordingly, the Court declines to

issue a certificate of appealability.  McCoy may request that the United States Court of Appeals issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## V.  CONCLUSION

For the reasons stated above, the petition is denied and dismissed and the Court declines to issue a certificate of appealability.  A separate order follows.

___1/6/2022_____ ___          ___/s/_____
Date                                              GEORGE J. HAZEL
                                                   United States District Judge

35